Cite as 2023 Ark. App. 67

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-21-537

| | | |
|---|---|---|
| | | Opinion Delivered February 15, 2023 |
| CITY OF SHERWOOD | | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION |
| V. | | [NO. 60CV-18-453] |
| CLINT BEARDEN | | |
| | APPELLEE | HONORABLE WENDELL GRIFFEN, JUDGE |
| | | REVERSED |

## N. MARK KLAPPENBACH, Judge

The City of Sherwood has filed this interlocutory appeal from an order of the Pulaski County Circuit Court denying the City's motion for summary judgment on the basis of statutory immunity. We reverse.

Becky and Dwight McPherson filed a complaint for inverse condemnation against the City on January 23, 2018.[1] The complaint alleged that the McPhersons owned residential real property at 6956 Waterview Place in Sherwood, and the City had placed rainwater drainage pipes under the street near their property. The plaintiffs alleged that the pipes were

---

[1] Both Becky and Dwight McPherson died during the pendency of the case. The circuit court entered an order substituting Clint Bearden as plaintiff and ordered that the case style should be amended to reflect the substitution.

not sufficient in size to handle the rainwater in the area, and the City's failure to place properly sized pipes near their property had resulted in repeated flooding of their home despite the City's assurances that the problem had been corrected. The plaintiffs claimed that the City's action had resulted in a "taking" due to the "continuous and systematic trespass of water" onto their property.

The City timely answered the complaint, denying any wrongdoing and asserting various affirmative defenses, including statutory immunity. Following discovery, the City filed a motion for summary judgment arguing that there was no evidence that it was involved in the installation of the pipes, that any inverse-condemnation claim was barred by the statute of limitations, and that the City was immune from liability pursuant to the tort-immunity statute because, although labeled as an inverse-condemnation claim, the claim actually sounded in tort. The City attached exhibits, including excerpts from the plaintiffs' responses to interrogatories and depositions. In those exhibits, the plaintiffs stated that the initial flooding occurred in July 2005. The plaintiffs admitted that they did not know if the City had actually installed the pipes, but they claimed that the City had either approved the installation or accepted it after the fact, thereby adopting the flooding problem. The City also attached an affidavit from its mayor stating that the City "does not now, nor has ever maintained any type of insurance coverage which could be utilized to compensate the Plaintiffs in this matter for any damage they allege to have occurred based upon their cause of action."

In response to the City's motion, the plaintiffs argued that summary judgment was not appropriate because they had timely and sufficiently alleged a claim for inverse condemnation with evidence that the City had created the flooding problem through approval of the drainage system and had failed to fix the problem despite its duty to maintain the drainage system. They attached excerpts of depositions from Richard Penn, the City's current city engineer; Ellen Norvell, the City's former city engineer; Brian Galloway, the City's director of public works; and Virginia Young, the City's mayor. In a supplemental filing, the plaintiffs submitted a letter from a valuation service valuing their dwelling with unrepaired damages at $0.

In their depositions, Penn and Norvell testified that when a developer is creating a subdivision and doing drainage work, the developer and a registered professional engineer submit plans for the city engineer to approve. The city engineer checks that a developer's calculations and drawings have been created correctly and ensures compliance with the City's rules and regulations. Penn testified that the property at issue, in its undeveloped state, was located in the path of water flow. Penn testified that he would have approved construction of a house on that lot only after an engineer had provided him with a design sufficiently dealing with the stormwater. Norvell testified that her office investigated the plaintiffs' flooding problem and found that the original subdivision plans did not show a certain pipe, and the office could not find subsequent documentation regarding when or why the pipe was installed. While construction plans were supposed to go through the engineer's office,

Norvell noted that construction would sometimes occur on private property without the City's knowledge.

Galloway testified in his deposition that he had been called out to the plaintiffs' property on at least two occasions. Once was after a very large rain event when the homeowner asked him to look at the situation, and Galloway checked the drainage boxes for any obstructions. Galloway testified that the City maintains the existing drainage structures that belong to the City and has done some maintenance on the plaintiffs' street, Waterview Place. Galloway said that he did not know of a solution to the plaintiffs' flooding problem. Young agreed in her deposition that it was the City's duty to maintain the rainwater and storm-drainage systems.

Following a hearing, the circuit court denied the City's motion for summary judgment. The court found that the complaint was not barred by statutory immunity because the plaintiffs had met proof with proof on the issue of inverse condemnation. The court also denied the motion on the basis of the statute of limitations upon finding that there was an issue of material fact on the issue of tolling.

The City has now filed this interlocutory appeal wherein the City argues that it is immune from suit and that the complaint is barred by the statute of limitations. We have jurisdiction to hear the statutory-immunity issue pursuant to Rule 2(a)(10) of the Arkansas Rules of Appellate Procedure–Civil, which provides that "[a]n order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official" is an appealable order. However, we lack jurisdiction at

this time to hear on appeal any issue other than whether the circuit court erred in denying summary judgment on the issue of immunity. *City of Malvern v. Jenkins*, 2013 Ark. 24, 425 S.W.3d 711. Accordingly, we do not address the City's statute-of-limitations argument.

Our law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *City of Malvern*, *supra*. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

The City contends that, rather than stating a claim for inverse condemnation, the plaintiffs have alleged a tort claim from which the City is immune. Arkansas Code Annotated section 21-9-301(a) (Supp. 2021) provides that

> [i]t is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

5

The issue of whether a party is immune from suit is purely a question of law and is reviewed de novo. *City of Malvern*, *supra*.

Inverse condemnation is a cause of action against a governmental defendant to recover the value of property that has been taken in fact by a governmental entity although not through eminent-domain procedures. *Robinson v. City of Ashdown*, 301 Ark. 226, 783 S.W.2d 53 (1990). "Fault" has nothing to do with eminent domain, and it is not bare trespass or negligence that results in inverse condemnation but something that amounts to a de facto or common-law "taking." *Id.* When a municipality acts in a manner that substantially diminishes the value of a landowner's land, and its actions are shown to be intentional, it cannot escape its constitutional obligation to compensate for a taking of property on the basis of its immunity from tort action. *Id.*

The City argues that there was no evidence that it did anything to invade or trespass on the plaintiffs' property because there was no evidence that the City installed the pipes that led to the flooding. The City acknowledges that it likely approved the drainage plans for the subdivision, but it argues—based on Norvell's deposition testimony—that those plans did not match the drainage ways that ultimately were installed and allegedly caused the flooding. We agree that the plaintiffs failed to offer any proof for the allegation in the complaint that the City "placed" the pipes. Although the deposition testimony did establish that the City would have approved the private developer's subdivision drainage system, we hold that the mere approval of the developer's plans is not sufficient evidence of government action that could constitute a taking. In *Robinson*, *supra*, the plaintiffs presented evidence

6

that their home had, over a nine-year period, been flooded intermittently with effluent from the sewer system constructed and negligently operated by the appellee, City of Ashdown. Here, rather than alleging negligent operation by the City, the plaintiffs alleged a design defect in that the pipes installed by the developer were too small to handle the stormwater. As other jurisdictions have found, the City's approval of a private development pursuant to the City's regulations should not give rise to liability against the City for the negligence of a developer. *See Phillips v. King Cnty.*, 968 P.2d 871, 879 (Wash. 1998). Further, even though the City had undertaken maintenance of the drainage system, there is no allegation that a lack of proper maintenance caused the plaintiffs' damages. *See id.* Plaintiffs alleged only that the insufficient size of the pipes led to the taking.

We also agree with the City that the plaintiffs failed to put forth proof of any *intentional* conduct necessary to establish a taking. In *Robinson*, *supra*, the supreme court held that when one knows that an invasion of another's interest in the use and enjoyment of land is substantially certain to result from one's conduct, the invasion is intentional. Here, there is no evidence that the City knew the plans it approved were substantially certain to lead to flooding on the property. *See City of Keller v. Wilson*, 168 S.W.3d 802, 830 (Tex. 2005) (holding that there was no evidence the City knew flooding was substantially certain to occur when the City relied on engineers' certifications that the plans met the City's codes and regulations and would not increase downstream flooding). Although the City does not dispute that it was informed of the flooding after the fact, the plaintiffs have not alleged any action constituting a taking beyond the initial approval and installation of the pipes. *See id.*

7

Accordingly, there is insufficient proof of any affirmative government activity that caused the plaintiffs' damages and could constitute an intentional taking.

We hold that the plaintiffs have failed to put forth sufficient proof to support an inverse-condemnation claim, and the claim, at most, amounts to negligence. Because the claim sounds in negligence, the tort-immunity statute is applicable. *See City of McCrory v. Wilson*, 2022 Ark. App. 200, 644 S.W.3d 823. There is no genuine issue of material fact in dispute as to whether the City is entitled to immunity on a tort claim. Arkansas Code Annotated section 21-9-301(a) (Repl. 2022) grants immunity "except to the extent that [the City] may be covered by liability insurance." The mayor's affidavit submitted by the City is sufficient to establish that the City does not have insurance to provide coverage for the plaintiffs' claim. *City of McCrory, supra*. Because the circuit court erred in denying the City's motion for summary judgment as to statutory immunity, we reverse.

Reversed.

HARRISON, C.J., and GLADWIN, J., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellant.

*The Brad Hendricks Law Firm*, by: *Lloyd W. Kitchens*, for appellees.